was brought to justice for a case this court specifically said, where the record is inadequate, we do not fill in the gaps by searching the record for factors justifying the sentence. This court should not do that here and we ask that you vacate the sentence and ask the court to do this in a procedurally proper way. Thank you. Thank you to both counsel for really well presented arguments to take the matter under advisement. And call the last case of today, which is Attorney General number 08-2571 Mr. Mosley and Mr. Palau. Thank you, sir. May it please the court, I'm Thomas Mosley, counsel for the petitioner Vadim Kaplun. I'd like to reserve three minutes for rebuttal. Very good. At issue in this case is whether the aggravated felony determination assertedly making Mr. Kaplun removable is legally flawed. And secondly, if we get to the issue of relief, whether the Board of Immigration Appeals fail to follow its own regulations by engaging in appellate fact-finding and not adopting the proper standard of review for the immigration judges. You probably know this case as well as anybody around because you argued in the Supreme Court in the Ditch Houghton. That's correct, Your Honor. And so it would appear when I look at what the was done here, it looks as if what the BIA was doing is they're not trying to interfere with the facts. They're saying that taking those facts, we don't come to the same conclusion under 101-43D. And how is this any really different? Well, Your Honor, it's actually 101-A43-M1. No, but Juan was M43-A1. That's correct. And that's exactly the situation here. But how is that different from this case? It is fundamentally different. While Nachowan said that you can, that it's not a necessary legal element and you can look to the sentencing determinations, here the sentencing determination on the one count to which Mr. Kaplun entered a guilty plea, the sentencing determinations contain no determination of loss. The district court doesn't make a finding with respect to loss. But the question is what did he plead to? Well, and here I think the government, and in some sense I think this case resembles Your Honor's decision for the court in Valancey because Yeah, you were counsel. That was a goodie. That was a goodie for you. Yes, I was counsel. But that was a case where you had a possibility of two different paths you could take, one that was helpful, one that was harmful, and it wasn't. But that's really different from here. But here I think we have a fundamental legal error on the part of the Board of Immigration Appeals because, as I say, the government concedes you don't have, in order to have a conviction, don't have to establish any loss. So the government makes the, I think, the elementary error of saying that because Mr. Kaplun pled guilty, he of necessity admitted the loss. Well, help me with something, please, Mr. Mosley. Mr. Kaplun pleaded guilty to securities fraud. That's correct. Right. And the criminal information that was filed in that matter states that investors paid Kaplun and his accomplices approximately $900,000, words to that effect. Is it not? Now, does not Nijawan, is that how it's pronounced? Nijawan, I think. Nijawan, I'm sorry. Nijawan would permit allegations in the criminal information to constitute particular circumstances, would it not? It would, Judge Smith, I submit, if the government was able to show that he admitted those as part of his guilty plea. How is it not admitted unless he says, well, I plead guilty to the information, except when paragraph four says a million dollars. That isn't the right number. I don't plead guilty to that particular. Well, Judge Michel, I think we have a, this could, the government had the burden here of showing that he did. The government never introduced the plea transcript in this case. And the government at the same time admits that in order to establish guilt here. My question to you is, when he pleaded guilty to the information, did he reserve any fact in the information and say, I'm not pleading guilty to that particular fact? We don't know that, Judge Michel, because the plea transcript, the government never introduced the plea transcript. The government, which had the burden of here, could have resolved this, but it didn't do so. What about the PSR? Is that in the record? The PSR is in the record. All right. And it states that Kaplan's scam involved over 200 investors and at least $700,000. But it merely, but Judge Smith, it merely parrots, if you will. Was it objected to by Kaplan? What? Was it objected to? Was that specific averment in the PSR objected to by Kaplan? It clearly wasn't objected to. Well, I mean, it arose, it arose, it arose in the, this arose in the context, and this is all pretty much our basic argument there. That doesn't sound like an answer to my question. Well, it was objected, no, it was objected to, it certainly was objected to in terms of being legally dispositive, because at that time we were arguing that this had to be a necessary legal element of the offense. But let's just add on. The court said, do you realize that I could give you a fine up to $2 million, and I didn't detect any, which is double whatever the amount was, so you take half of that, that's a million, and I didn't detect any objection to that. But the court, you're now talking, Judge Ambrose, about the. The sentencing column. About the sentencing. Sentencing. But, and certainly all the cases, for example, we cited at page 19 of our brief, our opening brief, Emick, Miller, and all, make clear that the government, the government doesn't have to, and it isn't necessary to establish, and then to establish any particular law. So that, for example, I don't think you could use his guilty plea as res judicata or collateral estoppel, assuming there was some shareholder suit down the road. And in the cases that we cite deal similarly where there are pleas to tax cases where the amount is not a necessary legal element in this. No, but what we're talking about here is whether there was a particularly serious crime, which has two prongs. And it's clear that the government's going into the second one. A discretionary designation of a particularly serious crime when the AG determines that the length of the sentence imposed, which was slightly under five years, that the alien has been convicted of a particularly serious crime. How do we get around that? Well, we now, with respect to that aspect of relief, of withholding of removal, the immigration judge made with no objection a determination under applicable precedent, particularly a matter of Francescu, that this was not a particularly serious crime. And the government at that point raised absolutely no objection. But Francescu's obviously also been superseded by the statute, hasn't he? But what happened in this case and what makes what I think is the fundamental error with respect to that aspect of the case is that the government made no such argument before the immigration judge, raised the issue only for the first time on appeal. We argue that should have been deemed a waiver. And then on appeal, relying solely upon the information, the board of immigration appeals and its non-precedential decision made a factual determination, which I don't submit that it was entitled to do, based solely upon the information. All right, but what's the argument that you've raised before us? The issue before us that you have raised is simply whether a nonviolent white collar securities law offense constitutes a particularly serious crime. Right, aside from everything that occurred throughout the lengthy process at various levels and back and forth in this case. So what is your argument, that a particularly serious crime is not the kind of, I would say, very large sophisticated fraud that occurred here, but rather it's limited to drug crimes and violent crimes? Well, what I'm saying is the precedent up to that point specifically limited and specifically, excuse me, Judge Smith, specifically limited it to violent or drug crimes or perhaps, but sexual crimes that had not, did not extend it. All right, notwithstanding any such limitation if it existed, what's unreasonable about the Attorney General's construction, then, of particularly serious crime? Well, two things are unreasonable. First, substantively, or really both procedurally, there's no explanation of why it departs from the precedent that it was, excuse me, the precedent that it was limited in such a way. And secondly. When you say limited and only, that language doesn't appear in those cases, does it? In those cases there were violence or other characteristics of the sort you argue, but I don't recall any of those decisions holding that only because there's violence can we so categorize. No, that's true, Judge Michelle, but again, on withholding, the central problem here I submit is that we were never given the opportunity to put in any kind of rebuttal evidence with respect to this because the government never objected, never argued before the immigration judge in the original hearing in April of 2004 that this particular offense would fall as a, would constitute a particularly serious crime. And this issue only arose on appeal because the government made no argument whatsoever before the immigration court that it was. I see you're arguing waiver. I am arguing first waiver and then secondly due process, lack of opportunity to be heard to put on this because this was raised for the first time on appeal. Is that what you argued in your brief? Yes, I did. At the very beginning, Judge Smith, when I addressed this. Point two, page 20. In other words, you're saying that what, that this argument wasn't made before the IJ? This argument was not made before the immigration judge. But then did you bring that up to the BIA, that the argument was waived before the IJ, in effect waiving the waiver? I didn't. I don't recall that I specifically made that argument. The government has not changed. There's not been any contention here that it, that it wasn't properly addressed. Finally, the. Excuse me. Let me just say, I can't find these arguments in your brief. So maybe when you come back on rebuttal, if you pick up what I may have missed, you can point it out to me. Finally, with respect to the final form of relief convention against torture, the Board of Immigration Appeals, excuse me, clearly engaged in appellate fact finding that's contrary, that's contrary to the rules. They would call it de novo review, I suppose. Well, yes, Judge Michel, it really was de novo review, but the regulations that govern what they were doing specifically limited them in their ability to make this de novo review. What underlying facts that led them to disagree with a conclusion or agree with a conclusion, whatever, what underlying facts did they in effect decide? They decided the likelihood that Mr. Kaplan would be tortured. You had extensive documentary. But that's not a fact. That's a prediction. No. You contend it's a fact, right? Your argument is it's a fact. My argument is it's a fact, and it's the kind of factual finding that district courts make all the time, and this court reviews under the substantially erroneous, the clear error standard. Will the merger reduce competition? Will the practice harm employment by minorities? Or the interfaith case, is there imminent danger, or the case we cite from the Fifth Circuit, will the appearance of this speaker be a clear and present danger? Those are the kinds of routine, factual determinations that district courts make all the time. And that's what the board. Yeah, but the board is not a district court, and the board's powers come from regulations, and the regulations are very expansive about their ability to review de novo anything except a fact finding. And when you read the whole language, it looks to me like it has to be a historical fact, not a predictive fact. Well, two things, if I may. So all the examples you give about district courts, they're both quite true but quite irrelevant. No, but the regulations and the guidance on those regulations specifically omit any reference to a determination, specifically omit any reference to a determination such as this as to whether the person will likely be tortured. They talk about instances where the facts are found, and the question is whether the facts found fall within torture or fall within persecution. But here a recognized expert witness who was subject only to desultory cross-examination was credited by the immigration judge who heard the testimony that Mr. Kaplan is likely going to be tortured if he's sent back to Ukraine. Yeah, but I didn't see the board as rejecting anything that the IJ found based on the testimony of the expert witness. What the board did as I read their opinion is to say, notwithstanding all those facts as being what we have to accept, the conclusion from those facts that there's a high likelihood that he will be discriminatorily and intentionally tortured by the government of the Ukraine just isn't a reasonable deduction to draw from those admitted facts. But that factual conclusion was for the immigration judge to make. Now, Congress or the attorney. Well, that's the issue. I mean, of course, that's your position. But the attorney general could have broadly provided in regulations or in explaining regulations that likelihood of torture is not really a factual issue and it can be de novo. But he didn't. And I think in that regard. Well, the board says it's a judgment call, and the regs specifically call out judgment calls as something subject to de novo board review, right? Right? Well, they say judgment, but they don't say that a factual, they don't say that a determination of the likelihood of torture is something. Of course they don't. We've all read the regs, but of course they don't spell out on that particular. But why doesn't it fall within the generic statement that judgment calls are de novo as distinct from findings of fact that are reviewed for clear error? I would submit that this does not realistically fall within a judgment call or discretion. You're talking about a person, you're talking about testimony by an expert that is subject to. Well, how about the rubric of application of law to stated facts, stipulated facts? In this situation, we don't have an issue as to whether what faces Mr. Kaplan is torture or not. We're not talking about merely bad conditions in a prison. The examples of torture through extortion that the expert witness gave was someone having his teeth pulled out until he agreed to Jewish. By the government or by private party? By the government. By members of the Ukrainian security forces acting in that same way. And that's, and that I. Acting for the government or acting as rogues? Well, acting, exercising their power as part of the government. We don't have an issue about whether what happens is torture. We have an issue about whether torture will happen. And in that regard. But doesn't it have to be torture caused or sanctioned by the government? Or with the acquiescence of the government. And that's specifically what the expert, specifically what the expert, and that's not how, and the board didn't decide the same. This is not going to be, this is not going to fall within how we define torture. The board said, the board said, we view this not as a factual issue and, therefore, we look at it our way and we don't think there's enough. And I submit that's contrary to the regulations. Thank you. Get you back on rebuttal, Mr. Palau. May it please the Court, Emanuel Palau for the respondent in this case, the Attorney General. Can I just ask a dumb question at the outset? Why didn't you introduce the plea colloquy from the 1998 conviction? Why wasn't that introduced, the plea colloquy from the 1998 conviction? I did not handle the case below, Your Honor. I'm not saying you did. Oh, I'm sorry. I'm not saying you did. I don't know the answer to that question. It would seem that that might nip this case in the bud. It would certainly be helpful, but I don't think it's needed here, based on the Supreme Court's decision in Nijhawan. Because there they said it doesn't matter whether he admits it or not. We don't need a judicial determination of the loss amount. It's merely a qualifier. And the information and the criminal information is sufficient, if unrebutted by the alien, to make out clear and convincing evidence. And, in fact, this Court in Monroe looked solely to a criminal information and said the alien never rebutted that figure. There's no indication anywhere in the criminal record that the loss was anything other than as stated in the information. And in those circumstances, that's clear and convincing evidence the government meets its purpose. In those cases, they had the plea colloquy, right? I believe so, Your Honor, yes. But in this case, we don't have the plea colloquy, so we have no idea what he admitted to or what he reserved or what he said. Well, Your Honor, as the Supreme Court noted in Nijhawan, there are at least two chances in every case for the alien to state his position on the losses. The first is in the criminal case. And there's also, since it's a key factor in his removal in the immigration proceeding, he could have said to the immigration judge or testified, as I believe you hypothesized, the information loss figure is incorrect. The loss was less than $10,000. It wasn't $900,000. There is simply no rebuttal whatsoever by the alien in this case regarding the loss amount. And in those circumstances, the information is sufficient. Yes, I agree. The plea colloquy would have been superior because there is an admission of sorts there. But here you have the information, and as Judge Smith noted, we have three references in the sentencing information report, rather, that the loss was at least $700,000. That's four unrebutted instances of the loss amount in question here. And that's easily sufficient information, I believe, under the Supreme Court's president in Nijhawan and also under Monroe, where there was no plea colloquy. The plea colloquy is, I think, more helpful where it's not clear that the allegations and the information are tethered to the guilty plea. Here there's no question about it. He's the only defendant mentioned in the information. All the acts that are identified in there were tethered. Well, there's some discussion, if not controversy, over just how reliable the whole tethering concept is. Surely you would concede that it would be good practice to introduce more than just an information, that it would be good practice to introduce a plea colloquy transcript. I have no argument with that, sir. But here I believe under ñ when this case was first briefed, it was an issue about need the loss amount be an element of the crime. That's over with now with Nijhawan. I think that case went even further in the unanimous opinion. Yeah, the point is you're now looking at the specific circumstances, and we all agree. I think the plea colloquy could have been helpful there. How do we draw the line between fact-finding and judgment? Your Honor, when you're looking at the board's review of an IJ decision, the line is drawn by the regulation. It's not drawn by how this court reviews board decisions. The regulation is specific to how the board reviews IJ decisions. The Attorney General explained in that regulation what he meant. What's the language precisely that you're relying on in the regulation? Well, the regulation has two parts. It says the board will review factual matters under a clearly erroneous standard, and the board will not make its own fact findings. That's I. And the second part is the board may review questions of law, discretion, and judgment, and all other issues and appeals from decisions of immigration judges de novo, which is very broad. You're saying this falls under all other issues? The board said it right here, Your Honor, in its decision. They said it's a question of judgment and application of a legal standard. Those are the two. It said it's a mixed question of law and fact and a matter of judgment. Yes, sir. And the AG gave an explanation or guidance on how this regulation is to be interpreted. He said that when we say questions of fact in this regulation, what we mean is what happened, past or historical facts. Here, the what happened, if you will, is nothing happened to Mr. Kaplan because he wasn't in the Ukraine. The what happened here is the current state of affairs in the Ukraine, and that's what the expert witness testified to. And the board took that what happened and said, contrary to the IJ, looked at it de novo and said we disagree that that what happened, those facts, meet the legal standard for convention against torture protection. The concern that you have, if you're writing such an opinion, is that you don't want to have something imply that a disagreement with an outcome, a BIA's disagreement with the outcome that the IJ came to, be couched in judgment and therefore enabled de novo review when, in fact, it's nothing more than an overturning of facts. And my question to you is how do we go about doing that? How do you write an opinion in such a way that we make it clear that you can't have a subterfuge by calling it judgment when, in fact, it's really facts? I think there's already decisions out there that say the board can't just give lip service to the correct standard. It has to apply it as well. Here, if you may recall, Your Honor, the board reversed the CAT, the torture determination, and the case was remanded back to them to clarify exactly what they did here. That's what matter of BK, the published precedent decision, does here. And there the board was very clear. They said facts, predictive types of facts, are based on the current state of affairs, but they're not the kind of facts that we're going to review under a clearlier bonus standard because they're more akin to judgment calls. Well, why aren't they simply inferential facts as opposed to historical facts? I'm sorry, Your Honor? Why isn't the prediction about future torture an inferential fact, even though it's not a historical fact? It's an inference about what will happen based on what's been proven to have happened in the past. And in that sense, it's more in the realm of facts than judgments or discretion or legal analysis or construing statutes, et cetera. Well, I would respectfully disagree. I believe when you're determining a cat claim, it's not just what might happen in the future. It's also what might happen if the treatment that might happen rises to the level of torture, if that treatment is carried out by the government or with government acquiescence. Here, so it's – Well, those are just several specific dimensions of a predictive inference. But it still seems like it's a prediction that's heavily factual in nature because it's based on facts. Well, it's all based on facts. My answer would be, Your Honor, a predictive fact cannot be clearly erroneous, at least the facts we're talking about here. There's no way the Board could look at the facts that were testified to as far as future predictions and say those are clearly erroneous. They haven't happened. They may never happen. There's no way to know that now, and that's exactly the distinction. Well, sure there is. If the government had eight witnesses that blew away this former KGB agent, this would be a very different case. But as I recall, there was no contrary evidence at all. The only evidence about the likelihood of torture, properly defined, was the evidence presented by the expert for cat. That's correct, Your Honor. And had there been such testimony, those parts of both sides of the testimony that related to current conditions, to what happened, that would be subject to clearly erroneous review. Those parts of the testimony on both sides would be subject to de novo review as far as predicting what might happen to this particular individual in the future. And had we had testimony on both sides about current conditions in the Ukraine, then the immigration judge would necessarily have to have made fact findings, and if the board departed from those fact findings under a – they could only depart from those fact findings that the IJ made under a clearly erroneous standard. That's not the case here. That's why there's no dispute of – I agree there's no contrary evidence about the current state of affairs in Ukraine in this case, only the expert for Mr. Kaplan testified here. However, that does not bind the board to accepting his predictions about what might happen to Mr. Kaplan in the future, who might be carrying that out, and whether that would constitute torture under the Convention Against Torture legal requirements. So I think – I mean, the board can disagree with the board's interpretation of its reg, but I would submit that the attorney general's guidance on how the reg should be interpreted, as well as the board's published interpretation here, is subject to deference, and I believe should be controlling absent a clear error or inconsistency with the statute. But the question – I guess the question is how does this rule play out? Let's say, for example, that the IJ says that based on the evidence that is before me, testimony of people within, in this case, a particular town in Ukraine, based on people who have talked with the security forces, that if this individual comes back, he will be taken into custody and he will be tortured. Is that a finding of fact, or is that a prediction that is subject to de novo review? I believe that it's under the decision of the board in this case, interpreting its reg, it would be a – it's mixed. It would not be clearly erroneous because these are predictions. They're predictive facts. Yes, they're based on current facts. At common law, with common law evidence principles, and then post-FREs, we admit all kinds of expert opinion, opinion evidence, which is inherently predictive and which is regarded as factual, and those facts are determined one way or another by a finder of fact, by jury, most of the time, much of the time, right? Yes, sir. So what is different in this case is that this is what the reg calls it. It may, in fact, applying traditional evidentiary principles, be more in the nature of a factual determination, but that's of no import here. I agree, Your Honor. It is what the regulation calls it. Yes, that's what's controlling here, and that's why precedents regarding how this court views the board's findings or other contexts that you just mentioned are not controlling here because the AG wanted something different for immigration cases, and he spelled it out in the regulation pretty clearly. He gave guidance on it, and the board has just interpreted it, and it's all, I believe, logically consistent. So for the purposes of the board's review of an immigration judge's decision, things that this court is used to seeing called fact questions in other contexts are not because they've been spelled out under a different scheme by the Attorney General, and that's really the key here, and I understand. Let me ask you about the second sentence in the Attorney General's interpretive commentary that illuminates the intended meaning of the regulations. The sentence that I'm focused on reads, the immigration judge's determination of whether these facts demonstrate harm that rises to the level of, quote, persecution, end quote, and whether the harm inflicted was, quote, on account of, end quote, a protected ground are questions that will not be limited by the clearly erroneous standards. Now, one way to read that sentence is if it's a question of defining what the word torture in the law means, that'll be treated as de novo, because that's substantially a legal issue, like classical statutory interpretation, and the same thing with phrases like persecution and on account of. But I didn't see here that there was any issue of construing the scope of these terms in the law. It looked to me that the issue being addressed here was essentially not whether it would be torture, but what the degree of likelihood was. We all agree, we all would have to accept the idea that a crummy jail doesn't constitute torture. So even if it's certain he's going to be put in jail, that isn't enough. But there was testimony, I think unrebutted, that he would not only be put in jail, but that in jail he would be deliberately tortured by agents of the Ukrainian government because of his religious affiliation. Now, I don't see in their interpretation of legal words, I see in there a purely quantitative issue about the degree of likelihood of what would plainly be torture. So where am I wrong? I don't believe, Your Honor, his characterization is quite – it wasn't like a Haitian case where they jail all returning criminal deportees. The testimony, as I recall it, Your Honor, of the expert, was that there were various ways that Mr. Kaplan could come to the attention of the authorities. One would be if he was destitute on the street. Another would be if he was apprehended on the street by a corrupt police officer who would seek to extort money from him. There were many numerous ways he might end up detained, and if so, he said that the conditions were so deplorable that if detained, that would be torture. He also did say, as you note, Your Honor, that people who are detained in Ukrainian prisons also have a chance of being tortured, singled out for torture on various bases. I believe his figure was that about 30 percent of detainees in police jails are singled out for torture. Those are facts. Yes, sir, those are facts. Those are facts from which he may extrapolate an opinion. Correct, Your Honor. You can extrapolate it one way or the other. Those are plainly facts. But what is the nature of a prediction? The nature of the prediction, Your Honor, is that what is the likelihood, given that there were various avenues testified to where he might come in touch with the police, the judgment is how likely are any of those scenarios to occur. If they do occur, how likely is it that Mr. Kaplan would be singled out for torture? There are legal roots under the rules and under common law evidence principles for those jurisdictions that don't have codifications, by which you could keep out of evidence an opinion that is predictive in nature. The first and most obvious one would be that you have an expert who isn't an expert. He cannot qualify. That's a legal determination by the judge acting as gatekeeper. Another would be that there have been certain facts that are predicates to the expression of an opinion. Those predicates do not provide an adequate foundation upon which the qualified expert may opine. That's a legal determination. That the opinion that is proffered is speculative in nature, a word that is featured somewhere in the long history of this case and at least one of the BIA's junctures, I believe, with the case. That's legal, but that's not what we're dealing with here. We're dealing with a declaration by an administrative apparatus that a prediction in and of itself, which under other evidentiary regimes would seem to be a factual determination, is not factual. It's mixed law and fact. Would you agree with that? Yes, I would, Your Honor. That's why the controlling regulation here is what makes this case perhaps give you a bit of unease. But the fact is that the Attorney General is charged with the immigration statute. He set up the board in the immigration courts, and he's decided that in this regulation, for limited to board's review of immigration judge decisions, here is the role he wants the board to play and here's the role he wants the IJ to play. And he's decided that an immigration judge is very well suited to assessing testimony and evidence of what happened, the present condition. He has no great advantage over the board and, in fact, may be at a disadvantage when it comes to assessing matters of judgment or application of law to fact. That's something the board is possibly better suited for. I'm not really arguing the merits of the board's decision. I mean, you've got to distinguish the merits of the board's decision versus the standard which they applied. Here, I think it's the board very clearly laid out why we are applying a de novo standard here, because we're talking about predictive facts. We part company with the predictive judgments made by the IJ as we can de novo. We don't part company with his past findings of the current state of affairs, and that's why we are going to differ with the IJ here, because the regulation says that for matters of judgment or discretion, that's something that we can look at de novo, and there was no fact finding here. And I would submit that if the interpretation urged by the petitioner is adopted, that there will be very little that the board can review. If you can't review things like this or application of standards, legal standards to facts, then a lot of appeals are going to come from the immigration judge virtually unfiltered to this court. I don't think that that's what the attorney general has in mind. I think the attorney general laid out in the regulation where the specialties of both bodies lie, and he did not purport to say how this court reviews board decisions or what this board considers to be questions of fact or law. It's very limited, very specific, and I think the AG's guidance and the immigration – I'm sorry, and the board's interpretation are both very reasonable. So in this regime, it may look like a duck, walk like a duck, and quack like a duck, but we still can't call it a duck. It's a mixed question of law and fact. It's not a fact. Yes, Your Honor. I mean, that's – Can you state in a simple, clear sentence exactly what the law component is in this case, of this decision by the board? I believe it's what you would call a mixed question of fact and law. No, you said four times it's a mixed question. So for that to be true, for that to be a fair characterization, there has to be a fact component and a law component. So I'm just asking you to state clearly in one sentence exactly what the law component is of this BIA decision. The law component is whether the facts that the expert testified to satisfy the legal standards for protection under the Convention Against Torture, which involve does the treatment that he is supposedly likely to receive, is that going to rise to the level of torture? Is it going to be carried out by a government official or with the acquiescence of the government? Those are the legal standards for cat protection. Torture, we all have our own idea what torture is, but just because you testify that he's going to be tortured doesn't mean that he qualifies for cat protection, Your Honor. So there's standards and there's a whole body of law, as this Court well knows, on what constitutes torture for purposes of the Convention Against Torture, and I would add that it's not just questions of law. It is most definitely, but the regulation also talks about matters of judgment, weighing whether he's proved enough below to meet the legal standards. Thank you very much. Thank you, Your Honor. Mr. Mosley. As you're coming up, Mr. Mosley, I think obviously what we've been spending a great deal of time on is in effect Volume 67 of the Code of Federal Regulations at 54-890, and the question then becomes, you know, obviously what happened to an individual is a fact. When determinations are made as to what you think will happen and should this person be removed, when are they fact, if at all, and when are they predictions that can be, or questions of judgment that can be reviewed de novo by the BIA? With respect to that regulation, I think the interpretation urged here runs the risk of swallowing up the position with respect to fact by the emphasis on judgment. And I think if you look and parse the Attorney General's explanation, he was clear in those areas where you would depart from considering something a factual determination. And I think it's significant, whether you say expressio unius, es exclusio ulterior, that he specifically exempted, did not make any reference to a determination. And it really is a determination, not as to whether it amounts to torture, but will torture happen. And that kind of determination, will it happen, was specifically not mentioned, was not considered by the Attorney General. We have one non-precedential case by the circuit which deals with something. But how do you get to the point, to include one is to exclude all others determines that a prediction here is a fact. I'm missing something. No, what I'm saying here is that we deal, as Judge Smith mentioned, with a common law regime and a regime with respect to adjudication by which expert opinions, in this case, uncontradicted, unrebutted expert opinion based on this person's expertise and in light of the factual background in the case, in light of the so-called background facts, his uncontradicted opinion that Mr. Kaplan would be tortured. Now it's the likelihood of that happening that I submit is a fact and the likelihood of torture occurring is not something that the Attorney General extracted. How much do we know from the reg about what is contemplated by the term judgment? The term judgment, I think, in these circumstances, if you look at the immigration law background against which it arose, talks about do you grant the kinds of forms of discretionary relief that the Act imposes. 212C, cancellation of removal, you make the determinations as to whether weighing the good and the bad in the person's life, you let him stay here. That's what I submit and that's the background against which this was enacted. You're talking about judgment. But here you're talking about I submit a factual determination as to where something would happen. And this Court's jurisprudence has not specifically addressed this, obviously. No, that's why we're spending a lot of time on it. This is an important issue as to how we go about interpreting the regulation because, in fact, the regulations are really the be-all and end-all of how we get it. This isn't where you engraft necessarily onto the immigration context what you would normally decide in a litigation context. But the purpose of these regulations, I submit, and if you read the preamble, I think it's reasonably clear, is to take the burden off the Board of Immigration Appeals and make the system more efficient by recognizing the factual finding powers of the immigration judge. And in terms of the overall policy that's at issue here. That puts the rabbit in the hat. The question is when is it a fact that the BIA cannot mess with versus something that we're going to say is not a fact? I submit under those circumstances, Judge Ambrose, that it is a fact when in terms of normal federal court litigation against which this arose, it would certainly be considered a fact, absent a specific exclusion of that from the regulations, which doesn't happen here. Ironically, the government's position in this case, in the final part of their brief, is to say, given how the Board has reweighed this, we're subject to a substantial evidence review, which is the kind of review you would have if something was a factual issue in the first place. And this is a... Is it pretty clear that if it's a fact, it's clear and convincing, and that if it's not a fact, if it's a prediction, that it's the no vote? So we're not really in dis... No, I would say if an expert, an undisputed expert, gives his opinion that this will happen, the immigration judge who hears the testimony, credits the expert, makes the finding as the immigration judge here, as a factual matter, that this finding, the torture, is likely to occur, that, I submit, is a fact. And in terms of the overall purpose of the regulation, it's the kind of thing that should be subject only to a clear error review. So the Board could never, upon review, say, we're looking at that ruling, and in reading the record of all these same predicate facts, upon which the expert opinion made this prediction, expressed this opinion, we conclude that it is speculative. It is conjecture. Isn't that a determination of law? And secondly, could that be a matter of judgment? I don't know. I'm wondering. Judge Smith, I would submit not... And I would suggest that just to call it speculative, when you have an expert who's uncontradicted, and to whom the government put in no contradictory evidence... That's a red herring. Contradiction has nothing to do with whether or not, as a matter of law, this is an opinion that can be expressed, whether it's speculative or not speculative. Well, it is an opinion. There was no challenge to the expert's ability to express the opinion. It was rationally explained, and the immigration judge made a factual... It was ability in terms of expert qualifications, or ability in terms of foundation, factual predicates. Neither was challenged. The government could have put on its own expert in this case, and that's why I think the Supreme Court... Let me take you back a few years. The person's now deceased. Remember Mr. Aird, A-I-R-D, John Aird, who used to testify in connection with... by affidavit with respect to planning policies in China. And there were some who later said, courts, BIA, et cetera, that they did not take his predictions of what would occur as being solidly based, and so they disagreed with him. Now, let's say this person puts in an affidavit, and that's the only evidence and there's no other evidence put in. You're telling me that if the IJ then decides that that is a predictive fact, that there's nothing that the BIA can't do on review with respect to it? It would depend, Judge, I submit, to the extent to which the government challenged it. If the government raised a challenge, a legal challenge, as I think Judge Smith mentioned, to the person's qualifications, that would be one thing. But that's not the case. And here we have a case that's come up where the immigration judge also made a finding that they don't even challenge, they didn't challenge, which is that his life and freedom, the withholding standard, would be threatened because he's a Jewish refugee being returned. This court, but to answer a little bit further to Your Honor's question, this court, albeit in a non-precedent decision, Xi, X-I-E versus Attorney General, came down August 24th, 2009, reached the same kind of conclusion with respect to the issue about whether someone is likely to be subject to a forced abortion or likely to, in other words, be persecuted upon return to China. And the court held that the board's reversal of an immigration judge's finding in that regard was a pellet fact finding, an opinion by Judge Chigueras, was a pellet fact finding contrary to the regulations. So all that I'm asking for here is a bright-line rule that the government, if it's seriously concerned, can easily live with under these circumstances by challenging the expert, by submitting contrary evidence, and pursuant to a regulatory scheme that was designed, I submit, to free the Board of Immigration Appeals from the burden here and ultimately free the federal courts from that burden, I mean, as a practice. Let me ask you the question that was asked by Judge Michel. Historical facts, we all agree, are facts that can be found by the immigration judge. What about predictions as to what will occur? Are those facts or are they judgments? I submit that those are facts. Because? Those are facts because you draw a factual conclusion that this will likely happen based upon the events before. And it's precisely the kind of factual determinations that, again, this court has recognized in other contexts. Will the merger reduce competition? That is predicted to be sure. It is an inference. But it is an inferential fact. And there's nothing in the regulations that say factual conclusions based on expert opinions that something will happen in the future are subject to de novo review. I mean, the Attorney General has the power to amend the regulations to do that. He's dissatisfied with the result. But that's not the plain language I submit of the regulations. Okay. Thank you. And I thank both of you for really very well presented arguments. This was, in effect, oral argument at its best because it became a discussion. There are this obviously is an important issue that we're grappling with, and I would ask afterwards if you would go to the clerk's office and have a transcript of this oral argument prepared. I also just don't know if we will do it, but by way of just a heads up, it's conceivable we may ask for some more briefing on this. But we'll decide. Thank you very much.